UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **KRISTIN GARZA**, an individual, **ALEXANDRA LINCOLN**, an individual, **SARAH JOHNSON**, an individual, and **LAUREN GRIMES**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**GUICHARD ST. SURIN**, an individual, and **THE GUARDIAN LAW FIRM, P.A.**, a Florida professional association,<br><br>Defendants. | CIVIL ACTION<br><br>Case No.  2:20-cv-049<br><br>Judge:<br><br>Mag. Judge: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COME** the Plaintiffs, **KRISTIN GARZA** ("GARZA"), **ALEXANDRA LINCOLN** ("LINCOLN"), **SARAH JOHNSON** ("JOHNSON"), and **LAUREN GRIMES** ("GRIMES")(collectively "Plaintiffs"), by and through undersigned counsel, and state the following for their Complaint:

### CAUSES OF ACTION

1. This is an action brought under the federal Fair Labor Standards Act ("FLSA") and Florida common law for (1) unpaid wages and overtime in violation of the FLSA, (2) assault, (3) battery, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) forcible confinement.

1

## **PARTIES**

2.     Plaintiff **GARZA** is an individual and a resident of Florida who currently resides in Lee County, Florida, and who performed services for the Defendants in Lee County, Florida. At all times, **GARZA** had individual coverage under the FLSA during her employment with the Defendants. **GARZA** was employed as a legal assistant and was responsible for being a primary contact between the Defendants and clients from outside the State of Florida. The Defendants further were engaged in interstate commerce because, at all material times, they had gross income in excess of $500,000 per year, had clients located in different states, engaged in interstate travel in connection with the representation, performed legal work involves claims under federal law, and used out-of-state products in connection with the representation. **GARZA** also assisted in the unloading of goods moved in interstate commerce and further engaged in interstate commerce by sending and receiving interstate mail, electronic mail, facsimiles and telephone calls. **GARZA** also received and made payments to/from out of state financial institutions. Most, if not all, of the raw materials the Defendants utilized originated from outside the State of Florida. **GARZA** performed work for the Defendants in Lee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **GARZA** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

3.     Plaintiff **LINCOLN** is an individual and a resident of Florida who currently resides in Lee County, Florida, and who performed services for the Defendants in Lee County, Florida. At all times, **LINCOLN** had individual coverage under the FLSA during her employment with the Defendants. **LINCOLN** was employed as a legal assistant and was responsible for being a primary contact between the Defendants and clients from outside the State of Florida. The

Defendants further were engaged in interstate commerce because, at all material times, they had gross income in excess of $500,000 per year, had clients located in different states, engaged in interstate travel in connection with the representation, performed legal work involves claims under federal law, and used out-of-state products in connection with the representation. **LINCOLN** also assisted in the unloading of goods moved in interstate commerce and further engaged in interstate commerce by sending and receiving interstate mail, electronic mail, facsimiles and telephone calls. **LINCOLN** also received and made payments to/from out of state financial institutions. Most, if not all, of the raw materials the Defendants utilized originated from outside the State of Florida. **LINCOLN** performed work for the Defendants in Lee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **LINCOLN** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

4. Plaintiff **JOHNSON** is an individual and a resident of Florida who currently resides in Lee County, Florida, and who performed services for the Defendants in Lee County, Florida. At all times, **JOHNSON** had individual coverage under the FLSA during her employment with the Defendants. **JOHNSON** was employed as a legal assistant and was responsible for being a primary contact between the Defendants and clients from outside the State of Florida. The Defendants further were engaged in interstate commerce because, at all material times, they had gross income in excess of $500,000 per year, had clients located in different states, engaged in interstate travel in connection with the representation, performed legal work involves claims under federal law, and used out-of-state products in connection with the representation. **JOHNSON** also assisted in the unloading of goods moved in interstate commerce and further engaged in interstate commerce by sending and receiving interstate mail, electronic mail, facsimiles and telephone calls.

**JOHNSON** also received and made payments to/from out of state financial institutions. Most, if not all, of the raw materials the Defendants utilized originated from outside the State of Florida. **JOHNSON** performed work for the Defendants in Lee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **JOHNSON** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

5.  Plaintiff **GRIMES** is an individual and a resident of Florida who currently resides in Lee County, Florida, and who performed services for the Defendants in Lee County, Florida. At all times, **GRIMES** had individual coverage under the FLSA during her employment with the Defendants. **GRIMES** was employed as a legal assistant and was responsible for being a primary contact between the Defendants and clients from outside the State of Florida. The Defendants further were engaged in interstate commerce because, at all material times, they had gross income in excess of $500,000 per year, had clients located in different states, engaged in interstate travel in connection with the representation, performed legal work involves claims under federal law, and used out-of-state products in connection with the representation. **GRIMES** also assisted in the unloading of goods moved in interstate commerce and further engaged in interstate commerce by sending and receiving interstate mail, electronic mail, facsimiles and telephone calls. **GRIMES** also received and made payments to/from out of state financial institutions. Most, if not all, of the raw materials the Defendants utilized originated from outside the State of Florida. **GRIMES** performed work for the Defendants in Lee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **GRIMES** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

6.  Defendant, **THE GUARDIAN FIRM, P.A.** ("**GUARDIAN**"), is a Florida professional association and is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). At all material times, **GUARDIAN**, which is located in Fort Myers, Florida, employed the Plaintiffs. **GUARDIAN** has gross sales well in excess of $500,000.00 per year and is thus engaged in interstate commerce. **GUARDIAN** has the sole authority to hire, fire and discipline employees, including the Plaintiffs, and it supervises and controls the employees' work schedule and conditions of employment, it determines their rate and method of payment for the employees and it maintains employment records of the employees.

7.  Defendant, **GUICHARD ST. SURIN** ("**ST. SURIN**") is an individual who resides in Fort Myers, Florida with his wife. At all material times, **ST. SURIN** has been the managing member of Defendant **GUARDIAN**, and exercised complete control over its operations. **ST. SURIN** has a significant ownership interest in the corporation, had personal responsibility for the decisions that led to the conduct which violated the FLSA, supervised and controlled employee work schedules and conditions of employment, maintained employment records, and had control of significant aspects of the corporation's day-to-day operations, including the compensation of employees. **ST. SURIN** is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **ST. SURIN** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like the Plaintiffs. **ST. SURIN** thus bears individual liability for the FLSA violations committed against the Plaintiffs.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction of this matter under 28 U.S.C. §1331.

9.  This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiffs reside in, and the Defendants' conduct business in, and some or all of the events giving rise to Plaintiffs' claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Lee County is within the Fort Myers Division.

## GENERAL ALLEGATIONS

11. All of the Plaintiffs were formerly employed by the Defendants as legal assistants.

12. **GARZA** was employed by the Defendants from July 27, 2016 to July 24, 2017.

13. **LINCOLN** was employed by the Defendants from June 2016 to December 19, 2017.

14. **JOHNSON** was employed by the Defendants from January 2, 2018 to February 16, 2018.

15. **GRIMES** was employed by the Defendants from March 1, 2018 to April 23, 2018.

16. At all material times, the Plaintiffs well qualified for their position with the Defendants.

17. The Plaintiffs performed their duties well and in a professional manner.

### Violations of the FLSA

18. All of the Plaintiffs were compensated on an hourly basis.

19. All of the Plaintiffs were scheduled to work from 8:30am to 5:00pm, but frequently were required to work in excess of those hours.

20. All of the Plaintiffs worked in excess of 40 hours in many weeks but the Defendants refused to pay the Plaintiffs their lawful overtime.

21. Defendants have willfully engaged in a pattern and practice of unlawful conduct by failing to record, credit, or compensate their employees, including the Plaintiffs, for all of the time Defendants required or permitted such employees to perform work for the benefit of Defendants.

22. Defendants have denied the Plaintiffs' lawful compensation for dozens, if not hundreds, of hours.

23. Defendants' practices are in direct violation of the FLSA, 29 U.S.C. 201 et. seq., and the Plaintiffs seeks injunctive and declaratory relief, compensation, and credit for all unrecorded and uncompensated work required or permitted by Defendants, liquidated and/or other damages as permitted by applicable law, and attorneys' fees and costs.

**St. Surin's Sexual Assaults & Batteries of Plaintiffs**

24. Upon hiring each of the Plaintiffs, **ST. SURIN** required them to submit to a personality test.

25. All Plaintiffs are female, were not wealthy and were in need of a job, a fact **ST. SURIN** knew about each.

26. **ST. SURIN** only hires female employees.

27. Immediately upon beginning their employment with the Defendants, each Plaintiff independently began being subjected to gross and continuing sexual harassment by **ST. SURIN**.

28. **ST. SURIN** made frequent attempts to initiate a sexual relationship with each Plaintiff and made comments of a highly sexual nature that were inappropriate for the workplace.

29. The Plaintiffs also regularly observed **ST. SURIN** masturbating while watching pornography at his desk with his office door wide open for the female staff to see.

30.  The Plaintiffs also observed that **ST. SURIN** preyed on his female clients that could not afford an attorney by requiring them to submit to oral sex or sexual intercourse in lieu of paying attorney's fees.

31.  As a result of **ST. SURIN**'s actions described herein, the liability for which also extends to **GUARDIAN** under *respondeat superior* since **ST. SURIN**'s actions were within the scope of his employment, all of the Plaintiffs have suffered great mental anguish.

### A. Garza.

32.  At all material times, **GARZA** was happily married and is a mother to five children.

33.  Shortly after **GARZA** began her employment, **ST. SURIN** began sending her sexually explicit text messages and further tried to initiate a sexual relationship with her.

34.  After **GARZA** rejected his advances, **ST. SURIN**'s sexual harassment worsened.

35.  On one occasion, **ST. SURIN** approached **GARZA** while she was seated at her desk. He then pulled out his penis and started masturbating, before asking **GARZA** to "help [him] out." **GARZA** immediately said no, but **ST. SURIN** then grabbed her and tried to kiss her, all the while with his penis hanging out of his pants. **GARZA** was finally able to get free of **ST. SURIN**'s grasp and fled to the office bathroom.

36.  **ST. SURIN** later apologized to **GARZA** and said he "let [his] lust get the best of [him]."

37.  **ST. SURIN** did not stop his advances and continued his conduct, including frequently groping **GARZA**'s breasts and buttocks in the office.

38.  Shortly thereafter, **ST. SURIN** attempted to use his position of authority to get **GARZA** and **LINCOLN** to submit to a threesome with him. He did this in writing in the form of

text messages. After each rejected his advances, **ST. SURIN** arrived at the office with a bottle of liquor and further pressured each to submit to a threesome. Frightened, **GARZA** left.

39. On another occasion, **ST. SURIN** further attempted to use his position of authority to convince **GARZA** and **LINCOLN** to attend an overnight conference with him in Orlando, Florida. **GARZA** refused to go, but **LINCOLN**, desperate for the job and income, did go and was ultimately raped by **ST. SURIN**.

40. **ST. SURIN** also tried to peep and watch **GARZA** utilize her breast pump, which caused **GARZA** to flee to her car to express breast milk.

41. One day, in June 2017, **ST. SURIN** summoned **GARZA** to his office. After **GARZA** entered his office, **ST. SURIN** forcibly grabbed her, pinned her to his desk, pulled her pants and panties down and digitally penetrated her vaginally. During the attack, he had his penis in his other hand and was masturbating. Throughout the attack, **GARZA** was crying and pleading with **ST. SURIN** to stop. **ST. SURIN** refused and ultimately ejaculated on **GARZA**, who left in tears and in physical pain.

42. Shortly thereafter, as a means to coerce sexual activity from **GARZA**, **ST. SURIN** gave **GARZA** an advance on her paycheck (which advance **GARZA** did not ask for). **ST. SURIN** informed **GARZA** that it could be thought of as a loan and that she could "pay it off in blowjobs."

43. Unable to tolerate the sexual assaults, batteries and harassment any longer, **GARZA** resigned on July 24, 2017.

### B. Lincoln.

44. Shortly after **LINCOLN** began her employment, **ST. SURIN** also began sending her sexually explicit text messages and further tried to initiate a sexual relationship with her.

45. After **LINCOLN** rejected his advances, **ST. SURIN**'s sexual harassment worsened.

46. On one occasion, **ST. SURIN** showed **LINCOLN** a gun he kept in his office while making clear to **LINCOLN** that it was in her best interest to have sexual relations with him.

47. On a somewhat regular basis, **ST. SURIN** physically forced **LINCOLN** to perform oral sex on him at the office.

48. **ST. SURIN** would frequently approach **LINCOLN** while she was seated at her desk and tell her to come to his office because he "needed a release," which was code for her to perform oral sex on him until he ejaculated. **ST. SURIN** even referred this this as "our Monday thing." On the occasions where **LINCOLN** refused, **ST. SURIN** used his position of authority to make **LINCOLN**'s working conditions far worse.

49. **ST. SURIN** regularly groped **LINCOLN**'s breasts and buttocks in the office.

50. **LINCOLN** would object to **ST. SURIN**'s behavior but to no avail.

51. Shortly thereafter, **ST. SURIN** attempted to use his position of authority to get **GARZA** and **LINCOLN** to submit to a threesome with him. He did this in writing in the form of text messages. After each rejected his advances, **ST. SURIN** arrived at the office with a bottle of liquor and further pressured each to submit to a threesome. Frightened, **GARZA** left.

52. On another occasion, **ST. SURIN** further attempted to use his position of authority to convince **GARZA** and **LINCOLN** to attend an overnight conference with him in Orlando, Florida in January 2017. **GARZA** refused to go, but **LINCOLN**, desperate for the job and income, did go and was ultimately raped by **ST. SURIN** in the hotel room

53. In April 2017, **ST. SURIN** summoned **LINCOLN** to his office. Upon entering, **ST. SURIN** grabbed **LINCOLN**, forced her down on the edge of the sofa, forcibly lifted her dress up

and raped her, which resulted in vaginal bleeding. **LINCOLN** left his office in tears after the attack, which caused both physical and mental injuries.

54. Unable to tolerate the sexual assaults, batteries and harassment any longer, **LINCOLN** resigned in December 2017.

### C. Johnson.

55. Shortly after **JOHNSON** began her employment, **ST. SURIN** also began sending her sexually explicit text messages and further tried to initiate a sexual relationship with her.

56. After **JOHNSON** rejected his advances, **ST. SURIN**'s sexual harassment worsened.

57. **ST. SURIN** would whisper to **JOHNSON** (and **GARZA**) "I want to fuck your brains out," "I couldn't sleep last night because I was looking at your FaceBook photos," and "what position do you like to get fucked in?" **ST. SURIN** would also constantly approach **JOHNSON** saying he "needed a release," which was to say he needed to ejaculate, while also telling **JOHNSON** that it did not matter he was married and had children. **ST. SURIN** would also call and text **JOHNSON** late at night and then tell her that sex with him would be so good that she would forget all about her boyfriend.

58. Knowing **JOHNSON** was quite religious, **ST. SURIN** would offer to "pray" with her, which occasions he would use to be alone with her and attempt to force unwelcome intimate physical contact. On several occasions, **ST. SURIN** would grab **JOHNSON** and pull her onto his lap where **JOHNSON** could feel his erect penis. When **JOHNSON** tried to escape, **ST. SURIN** locked his office door and refuse to let **JOHNSON** leave. On another occasion, **ST. SURIN** locked her in his office for an extended period of time and refused to let her leave unless she acquiesced to his sexual demands. When **JOHNSON** refused and was still locked in the office, **ST. SURIN**

11

then threatened to bring legal action against **JOHNSON**'s boyfriend unless **JOHNSON** capitulated to his demands.

59. Unable to tolerate the sexual assaults, batteries and harassment any longer, **JOHNSON** resigned under duress on February 16, 2018. While writing her resignation letter while still locked in an office, **ST. SURIN** stood over **JOHNSON** to ensure the letter was "suitable."

### D. Grimes.

60. Shortly after **GRIMES** began her employment, **ST. SURIN** also began calling her after hours, telling her sexually explicit details of his sex life, as well as inquiring about her sexual history and further tried to initiate a sexual relationship with her.

61. After **GRIMES** rejected his advances, **ST. SURIN**'s sexual harassment worsened.

62. **ST. SURIN** would frequently tell **GRIMES (**and **GARZA**) that he had a sex addiction. He would ask **GRIMES** about her sex life, including asking her if she had ever had sex with a black man (**ST. SURIN** is black) and telling her she "has a great ass" because she "got fucked by [her] black boyfriend." **ST. SURIN** also demanded she wear more revealing clothing at work.

63. **ST. SURIN** would also frequently make unwanted physical contact with **GRIMES** in the form of prolonged hugging, which made **GRIMES** very uncomfortable but **ST. SURIN** often refused to release his grasp.

64. Unable to tolerate the sexual assaults, batteries and harassment any longer, and after learning of the sexual assaults and batteries **ST. SURIN** committed against other female staff, **GRIMES** resigned on April 23, 2018.

65. The Defendants are liable for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress and forcible confinement, and the Plaintiffs have

suffered the following compensatory damages because of the actions of the Defendants: **GARZA** ($1,500,000.00), **LINCOLN** ($2,500,000.00), **JOHNSON** ($500,000.00) and **GRIMES** ($350,000.00).

## COUNT I: VIOLATION OF THE FLSA- ALL PLAINTIFFS

66. The Plaintiffs hereby incorporate Paragraphs 1-8 and 10-23 in this Count as though fully set forth herein.

67. The Plaintiffs were all covered, non-exempt employees under the FLSA at all times during their employment with the Defendants.

68. The Defendants were required by the FLSA to pay the Plaintiffs at least time and one-half for all hours worked in excess of 40 hours in a week.

69. The Defendants had operational control over all aspects of the Plaintiffs' day-to-day functions during their employment, including compensation.

70. The Defendants were Plaintiffs' employer and are liable for violations of the FLSA in this case.

71. The Defendants violated the FLSA by failing to pay the Plaintiffs at least time and one-half for all hours worked over 40 in a week.

72. The Defendants have willfully violated the FLSA in refusing to pay the Plaintiffs' proper overtime for all hours worked by them over 40 in a week.

73. As a result of the foregoing, the Plaintiffs have suffered damages of lost wages.

74. The Defendants are the proximate cause of the Plaintiffs' damages.

**WHEREFORE,** Plaintiffs pray that this Honorable Court enter a Judgment in their favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## COUNT II- ASSAULT- ALL PLAINTIFFS

75. Plaintiffs incorporate by reference Paragraphs 1-7, 9-17 and 24-65 of this Complaint as though fully set forth below.

76. During the course of the Plaintiffs' employment with **GUARDIAN**, **ST. SURIN**, on several occasions, subjected each of the Plaintiffs to intentional, unlawful offers of corporeal injury to the Plaintiffs by force.

77. **ST. SURIN** further caused force to be unlawfully directed toward the person of each of the Plaintiffs, thereby creating the Plaintiffs' well-founded fear of imminent peril.

78. Each of the Plaintiffs feared imminent peril.

79. **ST. SURIN** possessed the apparent present ability to effectuate the attempt upon each of the Plaintiffs.

80. At no time was **ST. SURIN** acting in self-defense.

81. **ST. SURIN** and **GUARDIAN** are the proximate cause of the Plaintiffs' damages.

**WHEREFORE**, Plaintiffs respectfully demand that this Honorable Court enter its judgment in favor of Plaintiffs and against Defendants in the amounts identified in ¶65, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

## COUNT III- BATTERY- ALL PLAINTIFFS

82. Plaintiffs incorporate by reference Paragraphs 1-7, 9-17 and 24-65 of this Complaint as though fully set forth below.

83. During the course of Plaintiffs' employment with **GUARDIAN**, **ST. SURIN**, on several occasions, caused a harmful or offensive contact to the Plaintiffs by unlawful touching and striking.

84. **ST. SURIN** intended to cause such contact and acted with reckless disregard of the consequences of his acts.

85. **ST. SURIN** had no justification for subjecting the Plaintiffs to harmful and offensive contact.

86. **ST. SURIN** was not acting in self-defense.

87. **ST. SURIN** is the proximate cause of the Plaintiffs' damages.

**WHEREFORE**, Plaintiffs respectfully demand that this Honorable Court enter its judgment in favor of Plaintiffs and against Defendants in the amounts identified in ¶65, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### COUNT IV- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS- GARZA, LINCOLN & JOHNSON

88. Plaintiffs incorporate by reference Paragraphs 1-7, 9-17, 24-59, 62 and 65 of this Complaint as though fully set forth below.

89. **ST. SURIN** did by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to **GARZA**, **LINCOLN** and **JOHNSON**.

90. **ST. SURIN** intentionally and/or recklessly inflicted emotional distress on **GARZA**, **LINCOLN** and **JOHNSON** by sexually assaulting, sexually battering and sexually harassing them.

91. **ST. SURIN** is subject to liability for such emotional distress.

92. **ST. SURIN** is the proximate cause of **GARZA**'s, **LINCOLN**'s and **JOHNSON**'s damages.

**WHEREFORE**, Plaintiffs **GARZA**, **LINCOLN** and **JOHNSON** respectfully demand that this Honorable Court enter its judgment in favor of Plaintiffs **GARZA**, **LINCOLN** and

**JOHNSON** and against Defendants in the amounts identified in ¶65, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### COUNT V- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS- ALL PLAINTIFFS

93. Plaintiffs incorporate by reference Paragraphs 1-7, 9-17, 24-59, 62 and 65 of this Complaint as though fully set forth below.

94. **ST. SURIN** did by extreme and outrageous conduct negligently cause severe emotional distress to the Plaintiffs.

95. **ST. SURIN** negligently inflicted emotional distress on the Plaintiffs by sexually assaulting, sexually battering and sexually harassing them.

96. **ST. SURIN** is subject to liability for such emotional distress.

97. **ST. SURIN** is the proximate cause of Plaintiffs' damages.

**WHEREFORE**, Plaintiffs respectfully demand that this Honorable Court enter its judgment in favor of Plaintiffs and against Defendants in the amounts identified in ¶65, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### COUNT VI- FALSE IMPRISONMENT- GARZA, LINCOLN & JOHNSON

98. Plaintiffs incorporate by reference Paragraphs 1-7, 9-17, 24-59 and 65 of this Complaint as though fully set forth below.

99. **ST. SURIN** did intend to confine **GARZA**, **LINCOLN** and **JOHNSON**.

100. **ST. SURIN** committed multiple acts of confinement on **GARZA**, **LINCOLN** and **JOHNSON**.

101. **ST. SURIN** did cause the unlawful detention and deprivation of liberty of **GARZA**, **LINCOLN** and **JOHNSON** against their will.

102. **ST. SURIN** did so without legal authority or color of authority.

103. **GARZA**, **LINCOLN** and **JOHNSON** were all aware of their respective confinement.

104. **ST. SURIN** actively participated in the restraint of **GARZA**, **LINCOLN** and **JOHNSON** and such restraint was unreasonable and unwarranted under the circumstances.

105. **ST. SURIN** is subject to liability for such unlawful detention.

106. **ST. SURIN** is the proximate cause of **GARZA**'s, **LINCOLN**'s and **JOHNSON**'s damages.

**WHEREFORE**, Plaintiffs **GARZA**, **LINCOLN**, **JOHNSON and GRIMES** respectfully demand that this Honorable Court enter its judgment in favor of Plaintiffs **GARZA**, **LINCOLN, JOHNSON** and **GRIMES** and against Defendants in the amounts identified in ¶65, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: January 22, 2020

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiffs
YORMAK EMPLOYMENT &DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com